Good morning. Assistant State's Attorney, Bianca Pucci, on behalf of the people of the State of Illinois. And Appellant, how much time do you need for rebuttal? Three minutes, please. Okay, then you may proceed. Good morning. May it please the Court, my name is Ginger Odom from the Office of the State Appellate Appellant, Eric Scott. We raised four issues on appeal. With the Court's permission, I would like to focus on the first issue, whether Dante Smith's membership in the Maniac Latin Disciples and his prior conviction for approaching another car and attacking its occupants with a baseball bat were admissible under People v. Lynch. I'm happy to answer the Court's questions on any issue. Well, let me ask you this. Without those things, was the evidence adequate to support a guilty verdict? Yes, Your Honor. Okay, and tell us how it was. Mr. Scott has never contested that he shot Smith in the stomach. The point on appeal here is whether or not his acts were reasonable and what his perception of danger and state of mind were at the time of the incident. Under the People v. Lynch, the Illinois Supreme Court held that when a defendant raises the issue of self-defense, he may introduce evidence of the victim's violent or aggressive nature in two instances, to show the defendant's state of mind at the time of the charged conduct and to show that the victim was the aggressor when there is a disputed testimony about who was the initial aggressor. Before trial, defense counsel sought to introduce two key pieces of Lynch evidence. Dante Smith's membership in the Maniac Latin Disciples gang under the first prong and his prior conviction for reckless conduct committed in full view before two Chicago police officers under the second prong. Evidence of Dante Smith's violent and aggressive nature were admissible under Lynch in this case and necessary for the jurors to be presented with the full picture in order to accurately assess Scott's self-defense claim. The trial court's decision to keep this evidence out was error. Looking at the gang evidence, Dante Smith was a member of the Maniac Latin Disciples. Eric Scott knew Smith was a member of the gang. He lived in Humboldt Park. He knew about gangs and gang members and was reasonably afraid of them. The first prong of Lynch addresses the mental state of the defendant at the time of the incident, which is to say, defendant's perception of danger and state of mind are always at issue whenever self-defense is raised. At the time of the incident, Scott's mental state was fear and his perception of danger was formed by Scott's knowledge that Smith was a gang member. He knows what gang members do and is afraid of them. The Illinois courts widely acknowledge that gang members are regarded with considerable disfavor and fear by other segments of society. Scott, as a non-gang member, logically and rationally falls into the category of persons who would necessarily be afraid of people they know to be gang members, such as Smith. And this is particularly so when such a gang member was approaching his car and thus his fiance and young child in a menacing and belligerent manner, yelling angrily with his hand up under his jacket as if he were holding a gun. Smith's membership in the Maniac Latin Disciples gang thus was the reasonableness of Scott's belief in his need to use deadly force in his defense and in defense of his family. So the trial judge, with regard to that issue, said that because this wasn't a gang-related incident that it was in a relevant manner? That's true. That was the argument that the state made and that was the eventual determination of the trial court. And this was error because the first prong of lynch. And gang membership has been allowed in other cases to show the defendant's perception of danger. For example, this court decided in Damn It's that the victim's association with the Spanish Cobra gang was relevant to show the defendant's perception of danger and state of mind and the reasonableness of his use of force, even if the defendant was not able to show that the victim in that case participated in the violent acts of the gang. So the state's argument that this is not relevant because it's not a gang-related case illustrates a misunderstanding of the first prong of lynch. Secondly, in addition to state of mind, the Illinois Supreme Court in Smith and this court in Nichols held that gang membership is admissible to show motive for what is an otherwise inexplicable act. In this case, without the gang evidence, the jury was left to evaluate whether Scott's otherwise inexplicable act of shooting Smith upon his approach was reasonable based on what the state characterized as Smith merely walking toward his car. And this is particularly so where the jury acquitted Mr. Scott of an attempt to first degree murder, which means that they found that he did not intend to kill himself, he believed that Smith was going to kill him or harm him in some way, he believed that Smith was holding a gun and may use it, and his motive was to protect himself and his family from Smith's attack, what he perceived to be Smith's attack, armed attack in fact. The exclusion of Smith's membership in the Maniac Latin Disciples Street Gang deprived the jury of the necessary information to make an accurate assessment of Scott's defense and prevented Scott from committing a baseball bat attack. Daunte Smith got out of his car in traffic and in full view of two Chicago police officers, attacked the occupants of another car with a baseball bat. The second prong of Lynch involves cases where there is a conflict about who was who. Did he attack the occupants or did he attack the car? He hit the car, right? It seems that he may have attacked both, but certainly the car is certain. But there was conversation in the court that he attacked both the occupants and the car that the people were occupying. So it's not, for me it's not certain that he did not also attack the occupants of the car itself, but certainly he attacked the car. Okay, go ahead. We know this from what? From the defense lawyers. The factual basis or the, how do we know the facts of that underlying case? It's what the defense lawyer included in her motion in limine and those were not, there was no exception taken to the facts presented at the hearing on that motion. The second prong of Lynch involves cases where there is a conflict about who was the initial aggressor to show the victim was the aggressor and to support the defendant's reasonable use of force. The state's argument is that the baseball bat attack was not admissible because there was no conflict in what they call the evidence of the event. Now the state boils the evidence down to only two components, that Smith got out of his car and that Scott shot him in the stomach. The parties do agree that those parts happened, but they agree on almost nothing else. The Smith's version was that Scott was following him around the intersection, whereupon Smith got out of his car and with his arms open in an almost peaceable manner, he was upset but not angry, wanted to ask Scott why he was following him. On the other hand, Scott's version was that he had prior hostile interaction with Smith, wherein Smith kicked in the door of his Lexus and showed him a gun that he was holding, and then so that Scott had formed his own fear of Smith before this day. And then on this day when he saw Smith, he took an evasive maneuver in order to avoid another conflict with Smith, but nonetheless ended up at the same intersection, whereupon Smith got out of his car wearing a jacket and in an angry and belligerent, menacing fashion, approached Scott with his hand under his jacket as if he were holding a gun. This conflict in testimony that there was a conflict about who was the initial aggressor was apparent at the hearing on the motion, certainly when the two parties testified at trial, and it was actually acknowledged by the trial court during the jury instructions conference when the trial court finally changed her mind and decided to go ahead and recognize that there was a conflict and then gave an initial aggressor instruction on the state's request as if Scott were the initial aggressor. The baseball bat attack was admissible to help the jury decide who was the initial aggressor. It was relevant because it would have dispelled the state's suspicion that Scott acted unprovoked. It would have supported Scott's version of events, and it would have helped the jury determine whether Smith's acts necessitated the amount of force that Scott used. By barring relevant and reliable evidence of Smith's prior baseball bat attack, the trial court deprived the jury of evidence that would have assisted in determining who was the initial aggressor and whether or not the amount of force used was reasonable. For these reasons and those in our briefs, we ask that this court reverse the conviction and remand the jury. Before you go, assuming that that's the case, that there was this conflict and therefore that should have been allowed, it's just a misdemeanor conviction, isn't it? It's a reckless conduct?  So the state's about to tell us that if it was error, it was harmless error. Tell us why it's not harmless error. It can't be harmless because the evidence of Smith's prior conduct so closely tracked what was happening in this case. It shows that Smith has a hair-trigger temper and is willing to approach in an aggressive, menacing, and belligerent fashion. And it shows that he has been armed in such traffic attacks in the past. So even if Smith didn't have a gun, the jury would know that Smith is prone to this kind of behavior. And evidence of his aggressive and violent nature are necessary and relevant to the jury to determine who was the initial aggressor. It cannot be harmless because without this evidence, the jury had only Smith's version of events that he approached in a peaceable and reasonable way and Scott flew off the handle and shot him in cold blood. And also to dispel the state's version of events, at the end of trial, when the state painted Scott as a predator who followed him around the neighborhood looking for him and lying in wait until he finally got out of his car. So that's why it was necessary. It's not harmless. And we also ask in the alternative that this court reduce his sentence or demand for a new sentencing hearing and or correct the minimus to reflect the proper conviction. Thank you. Thank you. May it please the court, Assistant State's Attorney, Beyond Capucci, on behalf of the people of the State of Illinois. The defendant here was afforded an opportunity to present a defense. He did present a defense and the jury did believe portions of the defendant's defense. Here there was evidence against the victim that did come in at trial. We have the three prior convictions, the 2004 PCS conviction, the 2002 improper use of a registration or certification conviction, the 2007 fake insurance card conviction. All those convictions go to the victim's ability or believability and credibility. But most importantly and most probative in this case that came in against the victim was the August 2008 incident in which the defendant did bring out during his defense and informed the jury that this victim had approached his vehicle when the defendant came to pick up the victim's sister at the house. The victim kicked the defendant's door and showed him a gun. This threat that the defendant was aware of, had knowledge of, and happened between this victim and this defendant were before the jury. The jury did acquit the defendant on the most... But the problem with that is that that's according to that witness's testimony. The jury doesn't have to accept that. But they certainly would have to accept a prior conviction. A prior conviction would be accepted if there was a conflict of events. Here we don't have a conflict of the essential events that occurred on March 28th of 2009. We have the victim and defendant both testifying that they were on the same streets. But most importantly the defendant himself as well as the victim testified that the defendant was always behind the victim. The victim was turning left at one street. Right behind him the defendant turned left. Again the victim turned left at another street. Right behind him the defendant turned left. And he turned right onto Grant. And the defendant again turned right onto Grant right after the victim. The victim was stopped at Grant and Sacramento. The defendant pulled up next to the victim and stopped at Grant and Sacramento. So you don't think the reckless conduct conviction is a problem? I don't think that there were conflicting versions of events in this case that would have made that conviction come in as more probative and prejudicial here. There was evidence against the victim with his violent tendencies that this defendant was aware of at the time of the actual shooting. The reckless conduct conviction that the defendant wanted to bring in, the defendant had no knowledge of. And this would only have dirtied up the victim in which there were no conflicting events. The victim testified that he got out of that car and approached the defendant. There was no conflict that the victim was just sitting in his car and the defendant came out and shot him. Those are big conflicting events. We have the victim agreeing with the defendant that he came out of the car and approached the defendant. Well, would you agree that somebody who gets out of a car and approaches another car, you know, that that's pretty reckless? I would say that a person approaching the car could be seen and can be construed as an act of aggression. But I would say also a person following the car throughout all the streets of Chicago, when they have an antagonistic relationship to begin with throughout all of Chicago, that is also an aggressive act. Both of these acts can be construed as aggressive acts, especially within the facts of this case. Here we have the defendant who is following the victim and has this prior history with the victim, with the sister, with the defendant's daughter's mother, the victim dating that woman, as well as the defendant attempting to date the victim's sister. There's a lot of domestic relations that are going on here that is an actual basis of this event. It was not gang-motivated in which defense counsel was arguing that this gang membership testimony should also come in. However, the gang evidence also was not admissible because this was not gang-motivated. Specifically, defendant relies on people being damned. In that case, the defendant had been shot by cobras and his house was fire-bombed by cobras. The defendant knew that the victim was a cobra, so when that victim and defendant were in their altercation, he had the state of mind that this guy is a cobra and all these cobras had been attacking him. So that was the state of mind here. It was gang-motivated and damned, whereas here it was not. The other two cases that counsel touched upon were Nichols and Smith. Those were also gang-related cases in which the gang membership in Nichols was admitted to identify the assailant. The name of the assailant was being called out because of his gang membership and that's how they were able to identify the defendant. In Smith, the gang membership was admitted to show common purpose or design or motive. It was a gang-motivated case, whereas once again, here it was not. This was a whole connection between the victim, the victim's sister, and the mother of the defendant's child. All of these people were connected and that was the basis of this event in March of 2009. More importantly, this was harmless error. The jury was aware of the victim's prior aggressive tendencies. The jury was aware of that 2008 incident in which this victim went up to the defendant, kicked in his door, and threatened him with a gun. Can I interrupt you for just a second? I thought, and I'm just, I don't have the record in front of me, but didn't a sister testify that that didn't happen, that that incident didn't happen? So it would make the issue of who was the initial aggressor more of a question, and so that this reckless conduct conviction could have helped the jury to determine who was actually the initial aggressor. I know you're saying the defendant always traveled with the other person, but my recollection is that he tried to avoid him going through an alley or something, and then they just happened to be on the same street. Not that there was this constant following the way you're presenting it. The defendant originally stated when he drove past Walton, when he was on Walton driving past Mozart, he saw the victim's car on Walton. He went around the block, back onto Walton, and that's when he saw the victim turn left onto Walton. So the defendant actually saw the victim turn around, went around the block, and went behind the victim. So I don't see where the defendant ever actually tried evading or getting away from the victim. It is true that the sister, when she testified in the defendant's case, that she stated the victim never came out to the car and hit the car and showed a gun. But there was no testimony in that record that the defendant turned down an alley or something, trying to evade? When that was stated, it was after he saw the victim on Mozart. He was on Mozart. When he saw the victim on Mozart coming up to Walton, he did turn around and go around the block. But then he turned back onto Mozart, and that's when he was behind the victim. So the jury had all that information. They did have this 2008 incident, and although the sister did testify... The fact that the defendant was cross-examined by the state's jury with regard to the fact that that 2008 incident was never reported to the police... Correct. So doesn't that cast doubt on that testimony? Yes. It puts the defendant's rendition of that account into doubt, into question, I should say. That is true. However, the victim's testimony was also put into question when the prior convictions of his deceitfulness with the 2002 improper use of certificate, and 2007 fake insurance card, and the 2004... So the whole thing's in question. So both victim and both defendant have their credibility challenged. So there's conflicting positions. So at the end of the trial, the trial judge, I think it was characterized as change your mind, but at the end of the trial, the trial judge decided, well, yeah, I'm going to go ahead and give this initial aggressor instruction. When she decides, when the trial court decides to give the initial aggressor instruction, doesn't that call back into question the lynch rulings? I would say no. Here we have, in the prior, the pretrial hearings in which those lynch rulings were made, there was testimony... Not the ganging with the other... Yeah, for the reckless conduct. The proper testimony was going to be, or was proffered, that the defendant was going to testify that he was being followed by the victim the whole time. The evidence that came out at trial was that the defendant was always behind the victim. We don't have a conflicting version of events. The trial court, as well as the ASAs, during pretrial proceedings and during the jury instruction conference, never stated that the victim was the initial aggressor. They always held the steadfast idea that the following of the victim could be interpreted as the initial aggression. They also stated that the jury could find that exiting the vehicle could be interpreted as the initial aggression. But those facts, those events, were not contested by the victim and the defendant. They both stated the same exact events that led up to both of those events. And those are the two events that the jury had to decide which was the initial aggression. And within that, both the instructions that were given were proper. Because there was minimal evidence that could show that the defendant was the aggressor by following the victim. But there was also minimal evidence to show that the victim was the initial aggressor by getting out of the vehicle and approaching the defendant. So both of those events that were there, which were not contested by either party, those were the facts. Those were the events that both parties testified to. That in itself allowed for both instructions to be given because there was minimal evidence of either way to be interpreted by the jury. The jury had all that information. My question is, doesn't that then lead to the conclusion that the events were conflicting and that the stories were conflicting and as a result that affects the Lynch decision to not allow the reckless conduct conviction into evidence because it was initially barred because the initial thought was the events were not conflicting. I would still hold fast to the evidence that came out were not conflicting in which the defendant was behind the victim and the victim approached the car. Those two events were not conflicting to either party. Because those events were not conflicting, the knowledge of the prior conviction was necessary to bring it in for the reasonable mindset of the defendant. Because the defendant was not aware of that, that can't go into his reasonable actions with his mindset because he was unaware of it. I would still submit that both sides here had the same exact events that the defendant was behind the victim and the victim approached the defendant afterwards. And depending on what the jury believed was the initial question within those two events. Okay, you said it and I think you just said it. Depending on who the jury believes was the initial aggressor. Doesn't it, let me say it now, doesn't it it certainly made me pause, I'll say. I don't know which one is the initial aggressor. But if I heard evidence that the victim got out of a car in traffic in front of two cops and beat the car with a bat, it might impress me that maybe the victim is the initial aggressor and that's what I'm saying. Shouldn't the jury have heard that? But I would still submit that the events were not in conflict because both testified to who was behind who and who got out of the car. The mindset of the defendant I think would come into question in letting that in. But even if here the evidence was in conflict, it was still harmless because the jury was aware of the 2008 conviction, was aware, not conviction, excuse me, of the incident with the gun and threatening the defendant and was aware of the prior convictions the jury was aware that this victim was not a peaceful person, was not this innocent person, the state's attorneys never painted him out to be this no harm ever done by this victim. The jury was aware of that and they acquitted the defendant on the attempted murder charge. They did find him guilty of the aggravated battery. But he shot him right in the stomach. I know, but you know, I was a judge at 26th Street for 18 years. We never found anybody guilty who only shot somebody once when they had a gun with eight bullets. It's just, you know, you shoot more if you want to kill somebody. But he did get off on the attempted murder, so he didn't have that intent and the jury found that he didn't have that intent. But it also needs to be reasonable. The force that was used here was still not reasonable and the jury would not have found that pulling a gun out and shooting someone immediately before anything else happened is a reasonable reaction. He was able to pull out in front. Unless you saw the guy with the gun before. That actually did come in. I understand it came in, but it was contested by the sister. And he didn't report it. And it might have seemed a lot more believable if they knew this guy got out of the car before and whacked a car with a baseball bat in front of two cops. Well, I would say that it was harmless error because the jury did believe portions of the defense by acquitting the defendant on the attempted murder charge and that it was unreasonable here for a person to shoot someone, even with the knowledge of a possible gun. It's a two-step thing, though, with regard to the justifiable use of force because the use of force has to be justified and the amount of force that's used has to be reasonable. So in the harmless error analysis, I think that's something that we have to think through and that is with the reckless conduct conviction, this idea that he went up to a car and hit the car with a baseball bat, give the defendant not just the idea that he might be the defendant of something, but to use deadly force. Would the reckless conduct conviction give you enough to say, not only am I in danger and I have to use force to defend myself, but I reasonably or someone else looking at him saying it's reasonable not only to use force, but it's also reasonable to use deadly force. I would submit that there still would not be reasonable force to use a gun with someone using a bat on a car. Shooting someone in the stomach, leaving them for dead and driving off is much different than taking you back to someone's car in a road rage incident. I would submit that shooting someone in the stomach in that scenario still would not be reasonable. I mean, shooting someone to kill them versus property damage to a car are two very different things. For all these reasons and the reasons delineated in our brief, we ask that you affirm the defendant's conviction and sentence. Thank you. Thank you. Rebuttal? I have to say you all both speak up so nicely and clearly. It's wonderful. We don't have to struggle to hear. Just in rebuttal, I have a couple of points. First, Scott did say that he undertook an evasive maneuver. He said he panicked when he saw Smith and he drove around the block. Then when he came back on the block, he didn't see Smith and so he proceeded down the way and they ended up side by side in the intersection. So that is a point that he did try to avoid Smith because of this confrontation. Now as to that 2008 confrontation, you are also correct that the sister denied that it happened. Not only did the sister deny it happened, but Smith denied that he had ever had any kind of altercation with Scott in the past. And Delilah Ortiz, Smith's girlfriend and the mother of his daughter, she also denied. So we have three denials that the altercation took place versus Scott's saying that this did take place. So certainly the jury could view that. You've got three to one and this statement is self-serving. Now as to Lynch, the state is still blurring the first prong and the second prong. The first prong is only about perception of danger and state of mind. Gang evidence is admissible because the defendant's state of mind and perception of danger is always relevant in a Lynch case. Testimony about the victim's violent and aggressive nature would be relevant, even if that's gang evidence. For example, and I'll just take a different tactic to it. Well how about his prejudicial effect? Prejudicial to the victim? Is that what you're asking me? There has not been a question about prejudice, but certainly the defendant is prejudiced by not allowing in evidence about why he was afraid. Otherwise he just has his own word that he was scared of this man who got out of his car who said that he approached Scott's car in a reasonable and even peaceable fashion. Under the state's version of events that Smith simply strolled over to Scott's car, that would be unreasonable. But because Scott knew that Smith was a gang member, it goes to his state of mind. Now the second aspect about that reckless conduct, the defendant doesn't have to know about these acts that go to whether or not his action was reasonable. That's for the jury to decide who was the initial aggressor. What I'm struggling with though is you're absolutely right, in the second crime he doesn't have to know about it. And that's the whole point of it. So you're going to tell the jury about the reckless conduct conviction. How does that justify the level of force that's used? Because in this incident he approaches a car and he hits the car with a baseball bat. So how does that justify, how does that lead the jury, when I speak about what he was thinking, an objective, a reasonable man. How does that lead the jury to come to the conclusion that a reasonable man would respond by shooting someone in the stomach? It's true, let's not minimize, get shot in the stomach. I'd rather not get shot in the stomach. Did you hear that? Anyway, how does the reckless conduct, hit the car with a baseball bat, lead a reasonable man to the conclusion that I've got to shoot this guy in the stomach with deadly force? Well, here's the thing. The defendant didn't know about the baseball bat attack and didn't know that the baseball bat attack may have only been hitting the car. But the defendant knew. No, no, I'm talking about the reasonable man, the objective reasonable man. How does telling the jury, how does telling the jury about this reckless conduct lead them to believe that a reasonable man should respond to this guy coming up with deadly force? Well, Mr. Scott was in his car with his fiance and his young child. And Smith was approaching in a belligerent and angry manner, hiding his hand like he had a gun. So it's not like he's just yelling at him. Instead, he is acting as if he has deadly force himself. Scott was under the impression that Smith also was armed with a gun, which would be deadly force. So he was protecting himself with what he perceived to be deadly force. Deadly force is not unreasonable against deadly force. So that would be my answer. The answer is also that it just circumstantially goes to the question of who's the aggressor. Right, and that's why it was admitted. And the states, the way that they lay out about how, about what the jury was, the question posed to the jury, do I know? You said that's why it was admitted. It wasn't admitted. Right, that's why we were asking for it to be admitted, or the defense lawyer below. The states, the state frames the question and says that the jury could construe that Smith was the initial aggressor, therefore it wasn't an issue. But a necessary but silent corollary to that question is that the jury could construe that Scott was the aggressor. And in this case, in fact, the jury was instructed that Scott was the initial aggressor. So, I mean, the idea that the jury was left with this decision with all of this evidence against Smith is simply not true. I mean, everybody denied that the original incident happened, and then the jury, before they went to deliberations, was instructed that Scott was the initial aggressor. And there was no way for Scott to come back with that because he had been precluded from introducing any evidence that would help the jury decide that Smith was the initial aggressor. There are no other questions? Thank you. Well, I want to thank both of you. You gave great oral arguments, and your tweets were very clear on the issues, and I congratulate both of you in doing a very good job. We will take this case under advisement, and the court